1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TIMOTHY M. GROUX,                              No.  2:23-cv-2831 CSK P

12                    Plaintiff,

13         v.                                        ORDER

14    CALIFORNIA PRISON INDUSTRY
      AUTHORITY, et al.,
15
                      Defendants.
16

17         Plaintiff is a state prisoner proceeding pro se and in forma pauperis.  Plaintiff's first

18    amended complaint ("FAC") is before the Court.  As discussed below, plaintiff's FAC is

19    dismissed, and plaintiff is granted leave to file a second amended complaint.

20    I.      SCREENNG STANDARDS

21         The court is required to screen complaints brought by prisoners seeking relief against a

22    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

23    court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally

24    "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

25    monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

26         A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

27    Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

28    Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

                                               1

indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Murphy, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

The Civil Rights Act

To state a claim under § 1983, a plaintiff must demonstrate: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation.

1  See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44

2  (9th Cir. 1978).  That is, plaintiff may not sue any official on the theory that the official is liable

3  for the unconstitutional conduct of his or her subordinates.  Ashcroft v. Iqbal, 556 U.S. 662, 679

4  (2009).  The requisite causal connection between a supervisor's wrongful conduct and the

5  violation of the prisoner's constitutional rights can be established in a number of ways, including

6  by demonstrating that a supervisor's own culpable action or inaction in the training, supervision,

7  or control of his subordinates was a cause of plaintiff's injury.  Starr v. Baca, 652 F.3d 1202,

8  1208 (9th Cir. 2011).

9  II.      PLAINTIFF'S FIRST AMENDED COMPLAINT

10      In the case caption, plaintiff included California Prison Industry Authority ("CALPIA" or

11  "PIA") as a defendant.  However, in the defendants' section of the pleading, plaintiff names only

12  Karen Stewart, CALPIA sewing supervisor; Valarie Lacebal, CALPIA sewing supervisor;

13  Andrew Telxtera also referred to as "Teixlera" (hereafter "Teixlera"), CALPIA head supervisor;

14  and Dave Swenson, CALPIA head supervisor; all employed at Mule Creek State Prison.  (ECF

15  No. 14 at 1, 2, 17.)

16      A.  First Cause of Action

17      Plaintiff, who identifies as transgender, alleges that in December 2022, while plaintiff was

18  working in the CALPIA sewing shop, defendants Lacebal and Stewart retaliated against plaintiff

19  because plaintiff told them they were violating plaintiff's privacy rights.  (Id. at 3.)  Plaintiff then

20  filed an inmate grievance complaining that both Lacebal and Stewart were releasing plaintiff's

21  male coworkers while plaintiff was changing with her breasts exposed.  (Id.)  Plaintiff claims the

22  male coworkers ran down the hallway, which took about 30 seconds, to the work exchange table

23  where plaintiff was undressing, about one-half foot from view of plaintiff, where at least 20 male

24  coworkers could see plaintiff "in her bra and her breasts being exposed to them."  (Id. at 4, 5.)

25  Plaintiff later stated she was exposed for about two minutes.  (Id. at 20.)  At this point, plaintiff

26  claims that officers Villasenor and Adair, who were stationed at the work exchange table, asked

27  "who released you guys to run down here, we didn't."  (Id. at 4.)  Some of the male coworkers

28  walked back to the shop, while others remained standing near the work exchange table looking at

plaintiff in her bra. (Id. at 5.) Plaintiff was crying and told those remaining coworkers they were wrong and put her shirt back on over her bra and started walking back to the shop. When plaintiff asked Lacebal and Stewart why they let the male coworkers run down to the work exchange table while plaintiff was changing, because Villasenor and Adair denied calling down to tell them to be released, Stewart responded that they thought plaintiff was gone because you were down there a long time. (Id. at 6.) At this point, a male coworker inside the shop started laughing. Plaintiff objected that Lacebal and Stewart had done this to plaintiff several times before, intentionally letting the male coworkers run down to see plaintiff in her bra and panties, as well as other transgender inmates. After plaintiff's cellmate verbally objected to the violation of plaintiff's privacy rights, plaintiff informed Stewart and Lacebal that she was going to file an inmate appeal on the matter. Plaintiff returned to the work exchange table with her cellmate, after which Lacebal and Stewart followed. (Id. at 6.) When Lacebal and Stewart arrived at the work exchange table, officer Villasenor asked Lacebal and Stewart why they released the male coworkers too early, as they had done before, and Stewart responded that they thought plaintiff was done stripping out and had gone home, but from now on, we will let plaintiff go last because she takes too long to strip out and leave the building. (Id. at 7-8.) Plaintiff again informed Lacebal and Stewart that plaintiff was going to file a grievance about this matter. (Id. at 8.)

Plaintiff also alleges that Lacebal and Stewart allowed plaintiff's coworkers to engage in high level verbal arguments, including one inmate's threat to punch plaintiff in her face and other threats, which caused plaintiff to work in an unsafe working environment. (Id. at 9.)

As a result of the actions of Lacebal and Stewart in releasing the male coworkers early, the coworkers saw plaintiff half naked causing plaintiff psychological pain and suffering and mental depression. (Id. at 9-10.) Plaintiff was humiliated and degraded. (Id. at 9.)

Plaintiff contends that the adverse action she sustained was the invasion of her right to privacy and protection of her safety. (Id.)

B. Second Cause of Action

In her second cause of action, plaintiff alleges violations of the Fourth and Eighth Amendment rights, gross negligence, and lack of ordinary due care for safety. (Id. at 11.)

4

Specifically, plaintiff alleges as follows.  In July of 2023, plaintiff was sitting at her sewing machine waiting for a sewing bundle to be delivered.  (Id. at 11.)  Defendant Stewart called plaintiff over and asked her why she wasn't sewing.  Plaintiff explained that the leadman hadn't brought plaintiff a sewing bundle.  Plaintiff then asked why Stewart had not put plaintiff back on the Bar tack sewing machine on which plaintiff had trained for two weeks.  Stewart responded that plaintiff was not fast enough.  Plaintiff replied that she was semi-skilled, but did three or two bundles, even when the bar tack sewing machine kept coming unthreaded.  Defendant Lacebal was standing nearby listening.  (Id. at 12.)  Plaintiff was sad and upset while returning to her sewing machine, and at this point inmate Johnson, another leadman, told plaintiff "to stop being like a retard person, you are acting retarded like a retard."  (Id.)  Plaintiff claims defendants Lacebal and Stewart were both aware the inmate made that comment.  Plaintiff responded that she is not a retarded person, and asked him to stop disrespecting her.  (Id.)  At this point, defendant Lacebal shouted to plaintiff "you're going home and give me your CALPIA sewing shop work tools."  (Id. at 13.)  Plaintiff asked Lacebal and Stewart what about leadman Johnson? (Id.)  Both defendants Lacebal and Stewart acted like they hadn't heard leadman Johnson's comment, and Lacebal told plaintiff that if she said one more word, Lacebal would push the alarm button and have the correctional officers escort plaintiff from the shop.  (Id.)  Plaintiff was then escorted out of the shop on July 7, 2023.  Plaintiff claims she was fired from the sewing shop for no probable cause, and claims defendants Lacebal and Stewart abused their authority and violated plaintiff's civil rights under CALPIA policies by subjecting plaintiff to misconduct, bad acts, reckless and gross negligence, and lack of ordinary due care for plaintiff's safety, and discrimination based on plaintiff's sexual orientation and gender.  (Id. at 13-14, 21.)  Plaintiff claims she was treated differently because she is a female transgender inmate and was "intentionally neglected" by defendants Stewart and Lacebal by their gross negligence and lack of ordinary due care for plaintiff.  (Id. at 14, 21.)  Plaintiff claims she was treated differently from her male coworkers, who were treated with respect.  (Id. at 15.)  Plaintiff alleges that the failure of defendants Stewart and Lacebal to properly supervise the workers led to plaintiff's coworkers disrespecting and threatening plaintiff.  (Id.)  Plaintiff claims that when she would verbally stand

up for herself, defendants Stewart and Lacebal would send plaintiff home or threaten her with a disciplinary write up.  (Id.)

As injury, plaintiff claims she was injured emotionally, sustaining psychological serious pain and suffering, and mental depression.  (Id. at 11.)

C.  Third Cause of Action

In her third cause of action, plaintiff alleges violations of the Fourth and Eighth Amendment, threat to safety, gross negligence, and lack of ordinary due care.  (Id. at 16.) Plaintiff reiterates her allegations from her first cause of action, and claims that defendants Dale Swenson, head supervisor, and Teixlera, head supervisor, failed to train their subordinates, and are responsible for the acts and omissions by their subordinates, defendants Stewart and Lacebal, including discrimination because of plaintiff's sexual orientation, and violating plaintiff's right of privacy, gross negligence and lack of ordinary due care for the safety of plaintiff, "or deliberate indifference for failure to train and supervise" defendants Stewart and Lacebal.  (Id. at 17, 19-22.) Plaintiff alleges both defendants Swenson and Teixlera were "aware or knew of [the] adverse actions on plaintiff" and other transgender inmates by a complaint to CALPIA sewing shop station at MCSP appeals coordinator's office and (A) yard custody program office.  (Id. at 18.)

Plaintiff claims wrongful termination, psychological serious pain and suffering, and mental depression.  (Id. at 16, 20.)

D.  Relief Sought By Plaintiff

Plaintiff seeks money damages.  (Id. at 23.)

III.    DISCUSSION

A.  Eleventh Amendment

In the caption of the FAC, plaintiff again names the California Prison Industry Authority ("CALPIA") as a defendant but does not identify CALPIA as a defendant in the defendants' section of the FAC.  To the extent plaintiff seeks to hold CALPIA liable under section 1983, such claims are barred by the Eleventh Amendment.  The Eleventh Amendment serves as a jurisdictional bar to suits brought by private parties against a state or state agency unless the state or the agency consents to such suit.  See Quern v. Jordan, 440 U.S. 332 (1979); Alabama v. Pugh,

1    438 U.S. 781 (1978) (per curiam); <u>Jackson v. Hayakawa</u>, 682 F.2d 1344, 1349-50 (9th Cir. 1982).

2        Here, CALPIA is a sub-agency within the CDCR that among other things, operates work

3    programs for prisoners.  <u>See</u> Cal. Penal Code §§ 2800-01; <u>Burleson v. California</u>, 83 F.3d 311,

4    312-13 (9th Cir. 1996) (describing origins of CALPIA).  CALPIA is by statute a part of the

5    CDCR.  <u>Burleson</u>, 83 F.3d at 312-13 (citing Cal. Penal Code § 2800).  CALPIA's status as a part

6    of the California correctional system brings it within the ambit of "prison-structured programs."

7    <u>Id.</u> at 314.  Accordingly, putative claims against CALPIA are barred by the Eleventh

8    Amendment.  <u>See, e.g.</u>, <u>Palacios v. Lewis</u>, 2023 WL 8628909, at *2 (S.D. Cal. Dec. 13, 2023)

9    (dismissing pro se prisoner's claims as barred by the Eleventh Amendment under 28 U.S.C.

10   § 1915(e)(2)(B)(iii) and 1915A(b)(ii)); <u>Hansen v. CAL/PIA</u>, 2010 WL 4723079, at *4 (E.D. Cal.

11   Nov. 15, 2010) (dismissing prisoner's claims against CALPIA as barred by the Eleventh

12   Amendment pursuant to 28 U.S.C. § 1915A).)

13       B.  <u>Retaliation</u>

14       Plaintiff's first claim fails to state a cognizable retaliation claim.  "Prisoners have a First

15   Amendment right to file grievances against prison officials and to be free from retaliation for

16   doing so."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing <u>Brodheim v. Cry</u>, 584

17   F.3d 1262, 1269 (9th Cir. 2009)).  A viable retaliation claim in the prison context has five

18   elements:  "(1) An assertion that a state actor took some adverse action against an inmate

19   (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

20   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

21   correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).  The filing of a

22   grievance or complaint, whether verbal or written, formal or informal, is protected conduct.

23   <u>Entler v. Gregoire</u>, 872 F.3d 1031, 1039 (9th Cir. 2017).  Threats to sue and/or pursue criminal

24   charges fall within the purview of the constitutionally protected right to file grievances.  <u>Id.</u> at

25   1044.  However, to establish a retaliatory motive, the plaintiff "must show that [the] protected

26   conduct was the substantial or motivating factor behind the defendant's conduct."  <u>Johnson v.</u>

27   <u>Ryan</u>, 55 F.4th 1167, 1201-02 (9th Cir. 2022) (citing <u>Brodheim</u>, 584 F.3d at 1271).

28       Here, plaintiff alleges that she told defendants Lacebal and Stewart that plaintiff intended

                                        7

1   to file a grievance right after she returned to the shop after the December 2022 incident, and then

2   filed her grievance some time after she left the shop that day.  Because plaintiff's protected

3   conduct took place after defendants Lacebal and Stewart released the male coworkers, such

4   protected conduct could not have been the substantial or motivating factor behind the actions of

5   defendants Lacebal and Stewart in December 2022.  Thus, plaintiff's allegations fail to state a

6   cognizable First Amendment retaliation claim.  Because the alleged wrongful conduct took place

7   before plaintiff exercised her First Amendment right to inform defendants Lacebal and Stewart

8   that plaintiff intended to file a grievance concerning the incident, plaintiff cannot amend her

9   pleading to state a cognizable retaliation claim.  This claim should be dismissed with prejudice.

10       Similarly, the Court has considered whether plaintiff could state a cognizable retaliation

11   claim based on the alleged wrongful termination from the sewing job.  However, the incident

12   related to the male workers' early release took place in December 2022, and it appears plaintiff

13   was not terminated until July 7, 2023, or later.  Given this lapse in time, and the lack of any other

14   facts suggesting a retaliatory motive, the Court cannot find that plaintiff was terminated based on

15   the 2022 incident or plaintiff's subsequent verbal comment that plaintiff would file a grievance,

16   or subsequent filing of a grievance.  Despite the amendment, plaintiff provides no additional facts

17   demonstrating that the termination was based on retaliation.  Therefore, such putative claim is

18   dismissed without prejudice.

19       C.  Fourth Amendment Right to Privacy

20       To the extent that plaintiff contends defendants Lacebal and Stewart violated plaintiff's

21   Fourth Amendment right to privacy, such claim fails.

22       The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails.  Bull

23   v. City and Cnty. of San Francisco, 595 F.3d 964, 972 (9th Cir. 2010) (en banc).  "[I]incarcerated

24   prisoners retain a limited right to bodily privacy."  Michenfelder v. Sumner, 860 F.2d 328, 333

25   (9th Cir. 1988).  "Shielding one's unclothed figure from the view of strangers, particularly

26   strangers of the opposite sex, is impelled by elementary self-respect and personal dignity."  Id.

27   However, "assigned positions of female guards that require only infrequent and casual

28   observation, or observation at distance, and that are reasonably related to prison needs are not so

degrading as to warrant court interference."  Id. at 334 (citing Grummett v. Rushen, 779 F.2d 491, 494-95 (9th Cir. 1985)); see id. at 332 (holding that the infringement of male inmates' right to privacy by allowing female officers to observe strip searches of male prisoners is "reasonably related to legitimate penological interests").  As one district court stated:

> "Importantly, the Supreme Court has not recognized that an interest in shielding one's naked body from public view should be protected under the rubric of the right of privacy. . . ."  See Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir. 1985). Although the Ninth Circuit has determined "a prisoner[ ] [has] limited right to bodily privacy," such a claim "calls for a highly factual inquiry." See Hydrick v. Hunter, 500 F.3d 978, 1000 (9th Cir. 2007); Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988). Factors the Court has considered include: "the gender of those prison officials who viewed inmates, the angle and duration of viewing, and the steps the prison had taken to minimize invasions of privacy." Id., citing Grummett, 779 F.2d at 494-95.

Medina v. Brown, 2019 WL 1979923, at *10 (E.D. Cal. May 3, 2019), report and recommendation adopted sub nom. Medina v. Kernan, 2021 WL 5179899 (E.D. Cal. Nov. 8, 2021).  The Ninth Circuit has explained that:

> we cannot assume from the fact that the [conditions] cause immense anguish that they therefore violate protected Fourth Amendment interests.  Far from it, our prior case law suggests that prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited.

Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993) (en banc) (citations omitted) (declining to reach Fourth Amendment claim and instead deciding case based on Eighth Amendment grounds).  On the other hand, the Ninth Circuit has held that alleged cross-gender viewing of pre-trial detainees "in showers and toilets frequently and up close" was sufficient to state a claim under the Fourth Amendment.  See Byrd v. Maricopa Cty. Bd. of Supervisors, 845 F.3d 919, 923 (9th Cir. 2017) (a non-emergency search of a male pretrial detainee by a female cadet was a Fourth Amendment violation).

Here, plaintiff does not allege that she was viewed by prison officials or personally subjected to cross-gender searches, or cross-gender viewing in showers or toilets "frequently and up close" by prison officials. There are no allegations of physical contact.  Rather, plaintiff alleges that male inmate co-workers were released early and arrived in the work exchange table

area before plaintiff finished changing clothes.  Plaintiff claims these male prisoners viewed her while they were one-half foot away for a period of two minutes while plaintiff was "in her bra with her breasts exposed."  (ECF No. 14 at 4, 5.)

While plaintiff's claim that the male coworkers were one half foot away from her is "up close," plaintiff includes no specific facts demonstrating that this happened "frequently." Plaintiff alleges this had happened before, and the alleged comment by Officer Villasenor confirmed it had happened before, but plaintiff provided no facts as to how often it may have happened in the past.  Thus, absent such facts, the Court cannot find that it occurred "frequently." In addition, unlike the viewing of inmates in showers or toilets where the inmates were completely naked or naked from the bottom down, plaintiff was partially clothed.

Therefore, while plaintiff was, in her words, humiliated and degraded by the viewing by her male coworkers, the Court cannot find that plaintiff states a claim for violation of the Fourth Amendment right to privacy.  As discussed above, the Supreme Court has not recognized that an interest in shielding one's naked body from public view is protected by the Fourth Amendment, and the Ninth Circuit has found such claims are "extremely limited."  Jordan, 986 F.2d at 1524. Therefore, plaintiff's Fourth Amendment claim should be dismissed with prejudice.

D.  Eighth Amendment

In the FAC, plaintiff broadly asserts an Eighth Amendment cruel and unusual punishment claim against defendants.  (ECF No. 14 at 3, 11, 16.)  In addition, plaintiff claims "gross negligence and lack of ordinary due care."  (Id. at 11, 16.)  However, gross negligence and lack of ordinary due care are insufficient to meet the deliberate indifference standard required by the Eighth Amendment.  The Court evaluates plaintiff's Eighth Amendment threat to safety and infliction of pain claims below.

1.  Threat to Safety

To state an Eighth Amendment threat-to-safety claim, a plaintiff must meet a two-part test.  "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotations omitted).

10

Second, the prison official must have a "sufficiently culpable state of mind," i.e., he or she must act with "deliberate indifference to inmate health or safety." Id. (internal quotations omitted). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. Id. at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." Id. at 837.

Plaintiff's allegations fail to demonstrate that any defendant knew of and disregarded an excessive risk to plaintiff's safety. Plaintiff describes no risk of substantial harm plaintiff faced based on the allegations herein. The allegations show that nonparty correctional officers were nearby, because plaintiff states they were in a position to call defendants Stewart or Lacebal once plaintiff finished dressing. While plaintiff alleges that male co-workers could view plaintiff changing clothes, plaintiff does not explain how their proximity to plaintiff posed a substantial risk to plaintiff's safety. Further, while plaintiff speculates that defendants released the male coworkers early because plaintiff is transgender, plaintiff alleges no facts demonstrating that either defendant acted with a culpable state of mind. Plaintiff thus fails to state a cognizable claim based on alleged deliberate indifference to plaintiff's safety.

### 2. Infliction of Pain

The Court has considered whether plaintiff could state a claim based on the Eighth Amendment's prohibition against the unnecessary and wanton infliction of pain, as the Ninth Circuit addressed the prisoners' privacy violation claims in Jordan. See Jordan, 986 F.2d at 1524.

"After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks and citation omitted). "Under traditional Eighth Amendment analysis, [courts] first consider whether there is an "infliction of pain", and, if so, whether that infliction is "unnecessary and wanton." Jordan, 986 F.2d at 1525.

In Grummet, the court addressed pat-down searches of male prisoners by female officers that included the groin area, and concluded there was insufficient evidence of pain to make out a

cognizable Eighth Amendment claim where "assigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference."  Grummet, 779 F.2d at 493 n.1, 494-95.  Subsequently, the Ninth Circuit explained that the pain described by the prisoners in Jordan was different than the pain alleged in Grummet because the prisoners in Jordan adduced evidence of "particular vulnerabilities that would cause the cross-gender clothed body searches to exacerbate symptoms of pre-existing mental conditions."  Jordan, 986 F.2d at 1526 (discussing Grummet, 779 F.2d at 493 n.1).

Here, plaintiff describes her pain as humiliation and degradation resulting in mental distress and depression, but she concedes that during this incident in December 2022, the male inmates viewed plaintiff in her bra with her breasts exposed for about two minutes.  Plaintiff does not articulate pain based on prior sexual abuse, violence or other victimization that constituted the particular vulnerabilities as demonstrated in Jordan.  See Jordan, 986 F.2d at 1525-26.  Thus, plaintiff's pain appears to be more along the lines of the momentary intrusion addressed in Grummet, 779 F.2d at 494-95, and, while painful for plaintiff, the claim is insufficient to rise to the level of an Eighth Amendment violation.

But even assuming plaintiff's identification as transgender, standing alone, constitutes a particular vulnerability to pain imposed by such viewing, plaintiff must also demonstrate that the infliction of such pain was "unnecessary and wanton."  See Jordan, 986 F.2d at 1525.

The early release of the male workers was "unnecessary" because defendants could have waited for the correctional officers to call and advise that plaintiff had finished changing clothes.  On the other hand, defendant Stewart's claim that it was taking plaintiff too long to change clothes could be viewed as reasonably related to prison needs, particularly if there was a deadline to get the workers back to their cells.  However, as in Jordan, the closer question here is whether the infliction of pain was "wanton."  Id. at 1527.  Because "wanton" was not defined, the Supreme Court adopted the deliberate indifference standard to determine what constitutes "wantonness."  Wilson v. Seiter, 501 U.S. 294, 303 (1991).  As discussed above, plaintiff fails to set forth facts demonstrating that any defendant acted with a culpable state of mind.  Plaintiff

1    claims that defendant Stewart informed the correctional officers that they thought plaintiff had

2    already left because plaintiff had taken so long.  (ECF No. 14 at 6.)  Further, plaintiff alleged that

3    defendant Stewart stated that in the future, she would release the male coworkers first, which

4    would resolve the issue.  (Id. at 7-8.)  Plaintiff does not allege that the early release occurred

5    again after the December 2022 incident or before the July 2023 termination.  The facts provided

6    by plaintiff do not demonstrate either defendant acted with a culpable state of mind.

7           Finally, the Court finds that plaintiff's Eighth Amendment claim fails for a different

8    reason.  Under the Prison Litigation Reform Act ("PLRA"), a plaintiff alleging an Eighth

9    Amendment claim for emotional injury must also allege at least a de minimis physical injury.  See

10   42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail,

11   prison or other correctional facility for mental or emotional injury suffered while in custody

12   without a prior showing of physical injury."); Oliver v. Keller, 289 F.3d 623, 627-28 (9th Cir.

13   2002) (holding that the qualifying physical injury need not be significant, but it must be more

14   than de minimis); Chappell v. Fleming, 2014 WL 793986, at *1 (E.D. Cal. Feb. 26, 2014)

15   (dismissing plaintiff's Eighth Amendment claims for emotional harm because he failed to allege

16   "any actual physical injury").  There is no allegation in the FAC that plaintiff suffered physical

17   injuries due to either defendant's conduct.  Plaintiff's allegations of suffering severe mental

18   distress cannot stand alone without physical injury to support an Eighth Amendment claim

19   pursuant to the PLRA.  See Chick v. Lacey, 2014 WL 6819904, at *4 (E.D. Cal. Dec. 2, 2014)

20   ("To the extent that plaintiff cites an inability to sleep, fear and 'debilitating emotional state,'

21   these impacts are not physical in nature and cannot satisfy the physical injury requirement of

22   section 1997e(e).").

23          For all of the above reasons, the Court finds that plaintiff does not state a cognizable

24   Eighth Amendment claim.

25          E.  Discrimination

26          In the second claim, plaintiff alleges discrimination based on plaintiff's sexual orientation.

27   "The Equal Protection Clause requires the State to treat all similarly situated people equally."

28   Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013) (citing City

1  of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  "This does not mean, however,

2  that all prisoners must receive identical treatment and resources."  Hartmann, 707 F.3d at 1123

3  (citing Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir.

4  1993)).  To state a claim under the Equal Protection Clause for a member of a protected class, a

5  plaintiff must demonstrate that (1) plaintiff is a member of a protected class and (2) that the

6  defendant acted with an intent or purpose to discriminate against plaintiff based upon membership

7  in a protected class.  Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998); Furnace v.

8  Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013).  "[D]iscrimination based on transgender status

9  independently qualifies as a suspect classification under the Equal Protection Clause because

10  transgender persons meet the indicia of a 'suspect' or 'quasi-suspect classification' identified by

11  the Supreme Court."  Norsworthy v. Beard, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. Mar. 31,

12  2015).[1]  Thus, discrimination on the basis of transgender status is subject to intermediate scrutiny.

13  Id. (citing SmithKline Beecham Corp. v. Abbott Labs., 740 F.3d 471, 481 (9th Cir. 2014)

14  (holding that United States v. Windsor, 570 U.S. 744, 769-70 (2013) "requires that heightened

15  scrutiny be applied to equal protection claims involving sexual orientation")).

16        In order to state a cognizable equal protection claim, a prisoner must show he or she was

17  intentionally discriminated against because of membership in an identifiable group.  See Davis v.

18  Prison Health Servs., 679 F.3d 433, 442 (6th Cir. 2012) (finding homosexual prisoner stated valid

19  Equal Protection claim when he alleged he was fired because of the defendants' anti-gay animus);

20  Glenn v. Brumby, 663 F.3d 1312, 1317 (11th Cir. 2011) (noting several circuits have held that

21  "discrimination against a transgender individual because of her gender-nonconformity is sex

22  discrimination, whether it's described as being on the basis of sex or gender"); Schwenk v.

23  Hartford, 204 F.3d 1187, 1198-1203 (9th Cir. 2000) (finding male-to-female transgender prisoner

24  _____

25  [1]  Plaintiff's claim does not implicate a fundamental right because plaintiff does not have a
   constitutional right to a job in prison.  See Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir.

26  1982), overruled on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).  "[T]he Due
   Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in

27  prison employment.'"  Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (quoting Ingram v.
   Papalia, 804 F.2d 595, 596 (10th Cir. 1986) (per curiam)) (citing Baumann v. Ariz. Dep't of

28  Corr., 754 F.2d 841, 846 (9th Cir. 1985)).

singled out for harassment because he presented and defined himself as a woman stated an

actionable claim for sex discrimination under the Gender Motivated Violence Act because "the

perpetrator's acts derived from perpetrator's belief that the victim was a man who 'failed to act

like one.'"); Rowe v. Corr. Med. Servs., Inc., 2010 WL 3779561, at *8 (W.D. Mich. Aug. 18,

2010) (discussing inmate's equal protection claim premised upon gender identity disorder and

noting that "a transsexual is a protected class under the Equal Protection Clause"), report and

recommendation adopted, 2010 WL 3779437 (W.D. Mich. Sept. 22, 2010); cf. Bostock v.

Clayton Cnty., Ga., 140 S. Ct. 1731, 1754 (2020) (holding that an employer violates Title VII by

firing an individual "merely for being gay or transgender"); Lautermilch v. Findlay City Schs.,

314 F.3d 271, 275 (6th Cir. 2003) (noting that to prove a violation of the Equal Protection Clause,

a plaintiff "must prove the same elements as are required to establish a disparate treatment claim

under Title VII").  In the alternative, the prisoner can allege membership in a constitutionally

suspect class.  See Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (finding black prisoner

worker stated valid Equal Protection claim based on race).

Here, plaintiff alleges no facts demonstrating that the actions of defendants Stewart and

Lacebal were based on plaintiff's transgender identity.  Plaintiff complains that she was taken off

the Bar Tack sewing machine for which she had been trained for two weeks, but defendant

Stewart explained plaintiff was taken off the machine because plaintiff "was not fast enough."

(ECF No. 14 at 12.)  Plaintiff also complains another inmate disrespected plaintiff, again citing

gross negligence and lack of ordinary due care," and claims the male coworkers were treated with

respect.  Plaintiff speculates that actions were taken based on plaintiff's transgender identity, but

plaintiff sets forth no facts evidencing discriminatory intent on the part of a particular defendant.

Although plaintiff claims "wrongful termination" as an injury she sustained, she does not include

specific facts showing that a named defendant terminated plaintiff's employment based on

plaintiff's transgender identity.  Plaintiff should include facts, if plaintiff has any, that plaintiff's

termination from the sewing position was improperly motivated by anti-transgender animus.  As

currently pled, plaintiff's FAC fails to state an equal protection claim.  However, plaintiff is

granted leave to amend should plaintiff be able to allege specific facts demonstrating that either

15

1    defendant Stewart or defendant Lacebal acted with discriminatory intent in terminating plaintiff.

2         F.   Supervisory Liability

3         As discussed above, plaintiff may not sue any official on the theory that the official is

4    liable for the unconstitutional conduct of his or her subordinates.  Ashcroft, 556 U.S. at 679.  To

5    the extent plaintiff seeks to hold defendants Teixlera or Swenson responsible solely based on their

6    positions as head supervisors over defendants Stewart and Lacebal, such effort fails.  Vicarious

7    liability may not be imposed on a supervisory employee for the acts of their subordinates in an

8    action brought under § 1983.  Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1074

9    (9th Cir. 2013).

10        That said, a causal connection between a supervisor's wrongful conduct and the violation

11   of the prisoner's constitutional rights can be established by inaction in the training, supervision,

12   or control of his subordinates where such inaction caused the plaintiff's injury.  Starr, 652 F.3d at

13   1208.  A supervisor's failure to train or supervise subordinates may give rise to individual

14   liability under § 1983 where the failure to train amounts to deliberate indifference to the rights of

15   persons with whom the subordinates come into contact.  City of Canton v. Harris, 489 U.S. 378,

16   388-89 (1989).  To state a failure to train claim, "a plaintiff must include sufficient facts to

17   support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy

18   that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional

19   injury would not have resulted if the municipality properly trained their employees."  Benavidez

20   v. Cnty. of San Diego, 993 F.3d 1134, 1153-54 (9th Cir. 2021); Clement v. Gomez, 298 F.3d 898,

21   905 (9th Cir. 2002) (to establish failure to train, a plaintiff must show that "in light of the duties

22   assigned to specific officers or employees, the need for more or different training is obvious, and

23   the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . .

24   can reasonably be said to have been deliberately indifferent to the need." (citation and internal

25   quotation marks omitted)).

26        "Mere negligence in training or supervision" is insufficient.  Dougherty v. City of Covina,

27   654 F.3d 892, 900 (9th Cir. 2011).  Vague and conclusory allegations concerning the involvement

28   of supervisory personnel in civil rights violations or the failure to train or supervise are not

16

1  sufficient to state a claim.  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "A pattern

2  of similar constitutional violations by untrained employees is 'ordinarily necessary' to

3  demonstrate deliberate indifference for purposes of failure to train."  Connick v. Thompson, 563

4  U.S. 51, 61 (2011) (citation omitted).

5        Plaintiff's allegations as to defendants Teixlera and Swenson are too vague and

6  conclusory to support a failure to train theory.  Plaintiff merely reiterates her allegations as to

7  defendants Lacebal and Stewart, and references failure to train in a conclusory fashion.  Plaintiff

8  includes no facts demonstrating that either head supervisor made a deliberate choice regarding

9  training or how the training was inadequate.  Plaintiff's claims against defendants Teixlera and

10  Swenson are dismissed.

11        G.  Harassment

12        In her second claim, plaintiff contends that defendants Stewart and Lacebal failed to

13  intervene to stop inmate Smith from calling plaintiff names or making other threats, but such

14  allegation also fails to state a claim.  Allegations of harassment and embarrassment are not

15  cognizable under section 1983.  Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1353 (9th

16  Cir. 1981), aff'd sub nom. Kush v. Rutledge, 460 U.S. 719 (1983); see also Franklin v. Oregon,

17  662 F.2d 1337, 1344 (9th Cir.1982) (allegations of harassment with regards to medical problems

18  not cognizable); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975) (Arkansas state

19  prisoner does not have cause of action under § 1983 for being called obscene name by prison

20  employee); Batton v. North Carolina, 501 F.Supp. 1173, 1180 (E.D. N.C. 1980) (mere verbal

21  abuse by prison officials does not state claim under § 1983).

22        H.  Putative State Law Claims

23        Throughout her FAC, plaintiff refers to neglect, gross negligence, and lack of ordinary

24  due care.  (ECF No. 14, passim.)  Although the Court may exercise supplemental jurisdiction over

25  state law claims, plaintiffs must first have a cognizable claim for relief under federal law.  See

26  28 U.S.C. § 1367.  Moreover, if a plaintiff pursues state law claims, the plaintiff must clearly

27  identify each claim and demonstrate compliance with the California Government Claims Act as to

28  each claim.  Cal. Gov't Code § 810, et seq.  The Government Claims Act requires that a tort claim

against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950, 950.2 (2011).  A plaintiff may file a written application for leave to file a late claim up to one year after the cause of action accrues.  Cal. Gov't Code § 911.4.

Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official.  State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1244 (2004).  Thus, timely presentation of a claim under the Government Claims Act must be pled in the complaint.  Id. at 1237, 1240; see also Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d. 1470, 1477 (9th Cir. 1995).  The plaintiff must present facts demonstrating compliance, rather than simply conclusions suggesting as much.  Shirk v. Vista Unified School Dist., 42 Cal. 4th 201, 209 (2007), as modified (Oct. 10, 2007).  Such requirements also apply to state law claims included in a federal action under § 1983.  See Volis v. Housing Auth. of the City of L.A. Emps., 670 F. App'x 543, 544 (9th Cir. 2016).

To be timely, a claim must be presented to the Board "not later than six months after the accrual of the cause of action."  Cal. Govt. Code § 911.2.  Thereafter, "any suit brought against a public entity" must be commenced no more than six months after the public entity rejects the claim.  Cal. Govt. Code, § 945.6, subd. (a)(1).  Federal courts must require compliance with the California Government Claims Act for pendant state law claims that seek damages against state employees or entities.  Willis v. Reddin, 418 F.2d 702, 704 (9th Cir. 1969); Mangold, 67 F.3d at 1477.  State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were presented in compliance with the applicable exhaustion requirements.  Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 627 (9th Cir. 1988); Butler v. Los Angeles County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).

Here, plaintiff included no allegation that she has complied with the California Government Claims Act.  Therefore, the Court does not construe plaintiff's allegations as attempting to pursue state law negligence claims.

///

18

1          I. Alleged Violation of CALPIA Policies

2          Section 1983 does not impose liability for violations state law.  See DeShaney v.

3  Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 201-03 (1989).  To the extent that

4  plaintiff's claims arise from allegations that any defendant failed to comply with CALPIA's

5  policies or regulations, allegations that a defendant failed to follow an administrative regulation

6  or policy, or state law, does not give rise to a federal civil rights violation.  See, e.g., Galen v.

7  Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [a plaintiff] to

8  demonstrate a violation of federal law, not state law."); Cousins v. Lockyer, 568 F.3d 1063, 1070

9  (9th Cir. 2009) (the failure to follow prison regulations or policies is not a federal constitutional

10  violation).

11  IV.    LEAVE TO AMEND

12          Based on the above deficiencies, plaintiff's FAC fails to state a claim upon which relief

13  can be granted and must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

14  1915A(b)(1).  Further, for the reasons stated herein, it is unclear whether plaintiff can allege facts

15  that state a cognizable civil rights claim.  However, in an abundance of caution, plaintiff is

16  granted leave to file a second amended complaint.

17          If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions

18  complained about resulted in a deprivation of plaintiff's constitutional rights.  See, e.g., West, 487

19  U.S. at 48.  Also, the complaint must allege in specific terms how each named defendant is

20  involved.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).  There can be no liability under 42 U.S.C.

21  § 1983 unless there is some affirmative link or connection between a defendant's actions and the

22  claimed deprivation.  Rizzo, 423 U.S. at 371; May v. Enomoto, 633 F.2d 164, 167 (9th Cir.

23  1980).  Further, vague, and conclusory allegations of official participation in civil rights

24  violations are not sufficient.  Ivey, 673 F.2d at 268.

25          In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

26  make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

27  complaint be complete in itself without reference to any prior pleading.  This requirement exists

28  because, as a general rule, an amended complaint supersedes the original complaint.  See Ramirez

1  v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint

2  supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation

3  omitted)).  Once plaintiff files a second amended complaint, the original pleading no longer

4  serves any function in the case.  Therefore, in a second amended complaint, as in an original

5  complaint, each claim and the involvement of each defendant must be sufficiently alleged.

6  V.    ORDERS

7      In accordance with the above, IT IS HEREBY ORDERED that:

8      1.  Plaintiff's amended complaint (ECF No. 14) is dismissed.

9      2.  Within thirty days from the date of this order, plaintiff shall complete the attached

10  Notice of Amendment and submit the following documents to the court:

11          a.  The completed Notice of Amendment; and

12          b.  An original of the Second Amended Complaint.

13  Plaintiff's second amended complaint shall comply with the requirements of the Civil Rights Act,

14  the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The second amended

15  complaint must also bear the docket number assigned to this case and must be labeled "Second

16  Amended Complaint."  Failure to file a second amended complaint in accordance with this order

17  may result in the dismissal of this action.

18

19  Dated:  April 28, 2025

20                                          _____
                                            CHI SOO KIM
21                                          UNITED STATES MAGISTRATE JUDGE

22  /1/grou2831.14b

23

24

25

26

27

28

1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TIMOTHY M. GROUX,                          No.  2:23-cv-2381 KJN P

                    Plaintiff,
12

13        v.                                    NOTICE OF AMENDMENT

14   CALIFORNIA PRISON INDUSTRY
     AUTHORITY, et al.,
15
                    Defendants.
16

17        Plaintiff hereby submits the following document in compliance with the court's order

18   filed_____.

19

20                            ☐        Second Amended Complaint

21                            (Check this box if submitting a Second Amended Complaint)

22

23   DATED:

24                                     _____
                                            Plaintiff
25

26

27

28