UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY M. GROUX,

      Plaintiff,

    v.

CALIFORNIA PRISON INDUSTRY
AUTHORITY, et al.,

      Defendants.

No.  2:23-cv-2831 CSK P

ORDER AND FINDINGS AND
RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis.  On April 30, 2025, plaintiff's first amended complaint was dismissed, and plaintiff was granted thirty days to file a second amended complaint.  Following two extensions of time (ECF Nos. 18, 20), plaintiff filed a second amended complaint, which is now before the Court.  (ECF No. 21.)  As discussed below, plaintiff's second amended complaint is dismissed, and the Court recommends that this action be dismissed without further leave to amend.

I.     SCREENING STANDARDS

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

1

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Murphy, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

II.     THE CIVIL RIGHTS ACT

To state a claim under § 1983, a plaintiff must demonstrate: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d

2

930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be established in a number of ways, including by demonstrating that a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates was a cause of plaintiff's injury.  Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011).

III.     PLAINTIFF'S SECOND AMENDED COMPLAINT

In the case caption, plaintiff included California Prison Industry Authority ("CALPIA" or "PIA") as a defendant.  (ECF No. 21 at 1.)  However, in the defendants' section of the pleading, plaintiff names only Karen Stewart, CALPIA sewing fabric shop supervisor; Valarie Lacebal, CALPIA sewing shop supervisor; Andrew Teixlera, CALPIA head supervisor; and Dave Swenson, CALPIA head supervisor; all employed at Mule Creek State Prison.  (ECF No. 21 at 2.)

A. First Claim

In her first claim, plaintiff, who identifies as transgender, alleges that her First Amendment rights were violated because she was "wrongfully terminated for filing a verbal and written complaint."  (ECF No. 21 at 3.)  Specifically, plaintiff alleges as follows.  In December 2022, while plaintiff was working in the CALPIA sewing shop, defendants Karen Stewart and Valarie Lacebal released the male inmate workers to the CALPIA worker change station while plaintiff was undressing and "in her bra and her breast was exposed."  (ECF No. 21 at 4.)  Plaintiff now alleges this occurred more than once or twice.  (Id. at 3.)  Plaintiff claims officer Villasenor talked with both defendants Karen Stewart and Valarie Lacebal about this early release, and defendant Karen Stewart said we thought plaintiff was finished dressing because she was down at the worker change station for a long time.  (Id. at 6.)  Mr. Villasenor told both

3

defendants Karen Stewart and Valarie Lacebal that "this is not the first time you [have] done this to your transgender inmate." (Id.)  Defendant Karen Stewart responded that from now on, plaintiff will go last.  (Id.)  At this point, plaintiff told both defendants Karen Stewart and Valarie Lacebal that plaintiff was going to file a 602 complaint about these incidents which took place more than twice.  (Id.)  Plaintiff alleges she made a verbal complaint and a written complaint in the month of December 2022, and correctional officers Villasenor and Adair were witnesses.  (Id. at 4.)

Plaintiff now claims that in the months of May and June 2023, while plaintiff was being released for noon pill line or a priority medical appointment, as plaintiff was leaving the work station, defendants Karen Stewart and Valarie Lacebal continued to release the male worker inmates as plaintiff was going to the worker change station.  (Id. at 7.)  Plaintiff returned to the work station and asked defendants Karen Stewart and Valarie Lacebal why they kept intentionally releasing male inmate workers to the worker change station while plaintiff, a transgender female, was undressing.  (Id. at 8.)  Defendant Karen Stewart responded, "If you want to get your noon pills at pill line or go to your priority medical appointment, you can strip out with your male CALPIA . . . coworkers." (Id. at 8.)  Plaintiff claims she was still being "disrespected" by both defendants Karen Stewart and Valarie Lacebal until July 7, 2023.  (Id.)

As a result of the actions of defendants Karen Stewart and Valarie Lacebal, plaintiff alleges she was injured by the wrongful termination from her job and the invasion of her privacy.[1] (Id. at 3.)

B.  Second Claim

In her second claim, plaintiff alleges her rights to equal protection based on her sexual orientation were violated by the wrongful termination for filing a grievance.  (Id. at 9.)  Specifically, plaintiff alleges as follows.  On July 7, 2023, plaintiff was sitting at her sewing machine waiting for a sewing bundle to be delivered.  (Id.)  Defendant Karen Stewart called

---

[1]  Plaintiff did not renew a separate cause of action based on a right to privacy.  In the April 30, 2025 screening order, plaintiff was provided the standards required to state a Fourth Amendment right to privacy claim, and the Court explained that such claims brought by prison inmates are "extremely limited." (ECF No. 18 at 8-10.)

4

plaintiff over and asked her why she wasn't sewing.  Plaintiff explained she was waiting for the leadman to bring plaintiff a sewing bundle, as plaintiff was trained to do.  Plaintiff then asked why defendant Karen Stewart had not put plaintiff back on the "sewing machine Bar Tack operation" on which plaintiff had trained for two weeks.  (Id. at 9-10.)  Defendant Karen Stewart responded that plaintiff was not fast enough.  Plaintiff replied that she had finished two or three bundles, even when the Bar Tack sewing machine was old, it often needed repairs, and kept coming unthreaded.  (Id. at 10.)  Defendant Valerie Lacebal was standing nearby listening.  (Id. at 12.)  Plaintiff was sad while returning to her single needle sewing machine, and at this point inmate Johnson, another leadman, told plaintiff to stop acting like a "retard."  (Id.)  Plaintiff told inmate Johnson to stop disrespecting her, because she is not a "retard."  (Id.)  Defendants Karen Stewart and Valarie Lacebal acted like they did not hear leadman Johnson.  Inmate Johnson again told plaintiff to stop acting "retarded."  Plaintiff then asked defendants Karen Stewart and Valarie Lacebal to ask your leadman Johnson to stop disrespecting plaintiff.  (Id. at 10-11.)  Defendant Valerie Lacebal responded, "you say one more word I am going to push my alarm button" and have plaintiff escorted out.  (Id. at 11.)  Plaintiff again asked defendants Karen Stewart and Valarie Lacebal to ask leadman Johnson to stop disrespecting plaintiff because she is not a "retard."  (Id.)  At this point, defendant Valarie Lacebal told plaintiff to give Lacebal plaintiff's tools.  Plaintiff responded by asking defendants Karen Stewart and Valarie Lacebal what about your leadman Johnson.  (Id.)  Plaintiff was then escorted out of the sewing shop, while defendant Valerie Lacebal told the officer that plaintiff "won't be coming back."  (Id.)  Plaintiff alleges she was wrongfully terminated on July 7, 2023, and was treated differently based upon her sexual orientation because her male coworkers were treated with respect and dignity, and plaintiff was humiliated and highly disrespected.  (Id.)

As a result, plaintiff was injured by defendants' discrimination based on plaintiff's sexual orientation by their "gross negligence, bad, reckless or callous acts, and lack of ordinary due care."  (Id. at 9.)

C.  Third Claim

In the third claim, plaintiff alleges the "supervisors' failure to train or supervise

subordinates amounts to deliberate indifference." (Id. at 14 (citing Starr, 652 F.3d at 1208.) Plaintiff claims defendants Karen Stewart and Valarie Lacebal were improperly trained, and such improper training was "obvious." (Id. (citing CALPIA policies 3303030.3, 3303.1, and 11040.8).) Plaintiff claims that defendants Andrew Teixlera and Dave Swenson, both head supervisors, were "aware or knew of the adverse action" of plaintiff and other transgender inmates by complaints to CALPIA sewing shop station at MCSP appeals coordinator's office and/or CALPIA's legal office of appeals. (Id.) Plaintiff claims that defendants Andrew Teixlera and Dave Swenson are liable for their subordinates' "bad acts" and the wrongful termination of plaintiff and for the alleged retaliatory acts of defendants Karen Stewart and Valarie Lacebal. (Id. at 18-19.) Plaintiff appears to contend that her wrongful termination would not have occurred had defendants Andrew Teixlera and Dave Swenson properly trained others. (Id. at 19.)

Plaintiff alleges she was injured by the wrongful termination from her prison job. (Id. at 14.)

### D. Relief Sought By Plaintiff

Plaintiff seeks money damages. (Id. at 22.)

### E. State Law Claims

Plaintiff claims she is in the process of filing a California victim compensation and government claim. (Id. at 20.)

## IV. DISCUSSION

### A. Eleventh Amendment

In the caption of the second amended complaint, plaintiff again names the California Prison Industry Authority ("CALPIA") as a defendant but does not identify CALPIA as a defendant in the defendants' section of the second amended complaint, and plaintiff includes no charging allegations as to the CALPIA. To the extent plaintiff seeks to hold CALPIA liable under section 1983, such claims are barred by the Eleventh Amendment. The Eleventh Amendment serves as a jurisdictional bar to suits brought by private parties against a state or state agency unless the state or the agency consents to such suit. See Quern v. Jordan, 440 U.S. 332 (1979); Alabama v. Pugh, 438 U.S. 781 (1978) (per curiam); Jackson v. Hayakawa, 682 F.2d

1344, 1349-50 (9th Cir. 1982).

Here, CALPIA is a sub-agency within the CDCR that among other things, operates work programs for prisoners. See Cal. Penal Code §§ 2800-01; Burleson v. California, 83 F.3d 311, 312-13 (9th Cir. 1996) (describing origins of CALPIA). CALPIA is by statute a part of the CDCR. Burleson, 83 F.3d at 312-13 (citing Cal. Penal Code § 2800). CALPIA's status as a part of the California correctional system brings it within the ambit of "prison-structured programs." Id. at 314. Accordingly, putative claims against CALPIA are barred by the Eleventh Amendment. See, e.g., Palacios v. Lewis, 2023 WL 8628909, at *2 (S.D. Cal. Dec. 13, 2023) (dismissing pro se prisoner's claims as barred by the Eleventh Amendment under 28 U.S.C. § 1915(e)(2)(B)(iii) and 1915A(b)(ii)); Hansen v. CAL/PIA, 2010 WL 4723079, at *4 (E.D. Cal. Nov. 15, 2010) (dismissing prisoner's claims against CALPIA as barred by the Eleventh Amendment pursuant to 28 U.S.C. § 1915A).)

B.  Retaliation

Plaintiff's first claim fails to state a cognizable retaliation claim. "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A viable retaliation claim in the prison context has five elements:  "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The filing of a grievance or complaint, whether verbal or written, formal or informal, is protected conduct. Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017). Threats to sue and/or pursue criminal charges fall within the purview of the constitutionally protected right to file grievances. Id. at 1044. However, to establish a retaliatory motive, the plaintiff "must show that [the] protected conduct was the substantial or motivating factor behind the defendant's conduct." Johnson v. Ryan, 55 F.4th 1167, 1201-02 (9th Cir. 2022) (citing Brodheim, 584 F.3d at 1271).

Here, plaintiff alleges that she told defendants Lacebal and Stewart that plaintiff intended

7

to file a grievance <u>after</u> she returned to the shop after the December 2022 incident, and then filed her grievance some time after she left the shop that day.  Because plaintiff's statement that she was going to file a grievance took place <u>after</u> defendants Lacebal and Stewart released the male coworkers early, after which they viewed plaintiff partially undressed, such protected conduct could not have been the substantial or motivating factor behind the actions of defendants Lacebal and Stewart in December 2022.  Thus, plaintiff's allegations fail to state a cognizable First Amendment retaliation claim.  Because the alleged wrongful conduct took place <u>before</u> plaintiff exercised her First Amendment right to inform defendants Lacebal and Stewart that plaintiff intended to file a grievance concerning the incident, plaintiff cannot amend her pleading to state a cognizable retaliation claim.  This claim should be dismissed with prejudice.

Plaintiff's new allegations concerning incidents in May and June of 2023 are too vague and conclusory to state a cognizable retaliation claim.  Plaintiff fails to set forth specific facts demonstrating that she suffered an adverse action related to these incidents.  Rather, she claims she returned to the work area to ask defendants why they were releasing the male coworkers at the same time.  Plaintiff includes no allegations that she then returned to the work change station where male coworkers viewed her undressed, or that such incident occurred again.  More problematic, however, is that plaintiff alleges no facts showing that the actions of defendants Karen Stewart and Valarie Lacebal in May or June 2023 were based on plaintiff filing a grievance in December 2022.  There is no proximity in time, and no other specific fact demonstrates a retaliatory motive.

The Court has again considered whether plaintiff could state a cognizable retaliation claim based on the alleged wrongful termination from the sewing job.  However, the incident related to the male workers' early release took place in December 2022, and plaintiff was not terminated until July 7, 2023.  Given this lapse in time, and the lack of any other facts suggesting a retaliatory motive, the Court cannot find that plaintiff was terminated based on the 2022 incident or plaintiff's subsequent verbal comment that plaintiff would file a grievance, or subsequent filing of a grievance.

Similarly, plaintiff's second claim contains vague allegations concerning incidents in May

8

and June 2023 which also do not demonstrate a proximity in time, or provide other specific facts suggesting a retaliatory motive by either defendant Karen Stewart or defendant Valarie Lacebal.

Finally, plaintiff's claim that she was still being "disrespected" by both defendants Karen Stewart and Valarie Lacebal until July 7, 2023, is insufficient to state a cognizable civil rights claim. Allegations of disrespect and harassment are not cognizable under section 1983. See Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1353 (9th Cir. 1981), aff'd sub nom. Kush v. Rutledge, 460 U.S. 719 (1983); see also Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.1982) (allegations of harassment with regards to medical problems not cognizable); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975) (Arkansas state prisoner does not have cause of action under § 1983 for being called obscene name by prison employee); Batton v. North Carolina, 501 F. Supp. 1173, 1180 (E.D. N.C. 1980) (mere verbal abuse by prison officials does not state claim under § 1983).

Plaintiff has been provided multiple opportunities to amend, and has not provided specific facts showing that the acts of either defendant Karen Stewart or Valarie Lacebal were based on plaintiff filing a grievance in December 2022. Thus, plaintiff's retaliations claims raised in her first and second claims for relief should be dismissed without leave to amend.

C. Discrimination

In the second claim, plaintiff alleges discrimination based on plaintiff's sexual orientation. "The Equal Protection Clause requires the State to treat all similarly situated people equally." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). "This does not mean, however, that all prisoners must receive identical treatment and resources." Hartmann, 707 F.3d at 1123 (citing Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993)). To state a claim under the Equal Protection Clause for a member of a protected class, a plaintiff must demonstrate that (1) plaintiff is a member of a protected class and (2) that the defendant acted with an intent or purpose to discriminate against plaintiff based upon membership in a protected class. Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). "[D]iscrimination based on transgender status

9

independently qualifies as a suspect classification under the Equal Protection Clause because transgender persons meet the indicia of a 'suspect' or 'quasi-suspect classification' identified by the Supreme Court." Norsworthy v. Beard, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. Mar. 31, 2015).[2] Thus, discrimination on the basis of transgender status is subject to intermediate scrutiny. Id. (citing SmithKline Beecham Corp. v. Abbott Labs., 740 F.3d 471, 481 (9th Cir. 2014) (holding that United States v. Windsor, 570 U.S. 744, 769-70 (2013) "requires that heightened scrutiny be applied to equal protection claims involving sexual orientation")).

In order to state a cognizable equal protection claim, a prisoner must show he or she was intentionally discriminated against because of membership in an identifiable group. See Davis v. Prison Health Servs., 679 F.3d 433, 442 (6th Cir. 2012) (finding homosexual prisoner stated valid Equal Protection claim when he alleged he was fired because of the defendants' anti-gay animus); Glenn v. Brumby, 663 F.3d 1312, 1317 (11th Cir. 2011) (noting several circuits have held that "discrimination against a transgender individual because of her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender"); Schwenk v. Hartford, 204 F.3d 1187, 1198-1203 (9th Cir. 2000) (finding male-to-female transgender prisoner singled out for harassment because he presented and defined himself as a woman stated an actionable claim for sex discrimination under the Gender Motivated Violence Act because "the perpetrator's acts derived from perpetrator's belief that the victim was a man who 'failed to act like one.'"); Rowe v. Corr. Med. Servs., Inc., 2010 WL 3779561, at *8 (W.D. Mich. Aug. 18, 2010) (discussing inmate's equal protection claim premised upon gender identity disorder and noting that "a transsexual is a protected class under the Equal Protection Clause"), report and recommendation adopted, 2010 WL 3779437 (W.D. Mich. Sept. 22, 2010); cf. Bostock v. Clayton Cnty., Ga., 140 S. Ct. 1731, 1754 (2020) (holding that an employer violates Title VII by

---

[2] Plaintiff's claim does not implicate a fundamental right because plaintiff does not have a constitutional right to a job in prison. See Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1982), overruled on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). "[T]he Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment.'" Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (quoting Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986) (per curiam)) (citing Baumann v. Ariz. Dep't of Corr., 754 F.2d 841, 846 (9th Cir. 1985)).

firing an individual "merely for being gay or transgender"); Lautermilch v. Findlay City Schs., 314 F.3d 271, 275 (6th Cir. 2003) (noting that to prove a violation of the Equal Protection Clause, a plaintiff "must prove the same elements as are required to establish a disparate treatment claim under Title VII"). In the alternative, the prisoner can allege membership in a constitutionally suspect class. See Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (finding black prisoner worker stated valid Equal Protection claim based on race).

Here, plaintiff alleges no facts demonstrating that the actions of defendants Karen Stewart and Valarie Lacebal were based on plaintiff's transgender identity. Plaintiff complains that she was taken off the Bar Tack sewing machine for which she had been trained for two weeks, but defendant Karen Stewart explained plaintiff was taken off the machine because plaintiff "was not fast enough." (ECF No. 21 at 10.) Plaintiff also complains another inmate disrespected plaintiff, and claims the male coworkers were treated with respect. Plaintiff speculates that actions were taken based on plaintiff's transgender identity, but plaintiff sets forth no facts evidencing discriminatory intent on the part of a particular defendant. Although plaintiff claims "wrongful termination" as an injury she sustained, she does not include specific facts showing that a named defendant terminated plaintiff's employment based on plaintiff's transgender identity.

Plaintiff has been provided multiple opportunities to provide specific facts demonstrating that plaintiff's termination from the sewing position was improperly motivated by anti-transgender animus. Plaintiff has failed to do so. Therefore, the Court recommends that plaintiff's second claim be dismissed without leave to amend.

D. Supervisory Liability

As discussed above, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. Ashcroft, 556 U.S. at 679. A supervisor's failure to train or supervise subordinates may give rise to individual liability under § 1983 where the failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact. City of Canton v. Harris, 489 U.S. 378, 388-89 (1989). To state a failure to train claim, "a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that

11

amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1153-54 (9th Cir. 2021); Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (to establish failure to train, a plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need." (citation and internal quotation marks omitted)). "Mere negligence in training or supervision" is insufficient. Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).

Here, plaintiff again seeks to hold defendants Teixlera or Swenson responsible solely based on their positions as head supervisors over defendants Stewart and Lacebal. Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983. Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013). Although plaintiff now cites to various CALPIA policies plaintiff claims defendants Karen Stewart and Valarie Lacebal violated, plaintiff includes no specific facts showing that either defendant Teixlera or Swenson was deliberately indifferent to the need to train defendants Karen Stewart and Valarie Lacebal, and that such inadequate training caused a constitutional violation. Rather, plaintiff reiterates her allegations as to defendants Karen Stewart and Valarie Lacebal, and merely alleges the failure to train is obvious. Plaintiff includes no facts demonstrating that either head supervisor was deliberately indifferent to a need for training that resulted in a constitutional violation. Plaintiff's claims against defendants Teixlera and Swenson should be  dismissed.

E.  Potential State Law Claims

 In the second amended complaint, plaintiff refers to neglect, gross negligence, and lack of ordinary due care. (ECF No. 21, passim.) Although the Court may exercise supplemental jurisdiction over state law claims, plaintiffs must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. Because the Court recommends that plaintiff's federal claims be dismissed, the Court recommends that the district court decline to exercise supplemental

jurisdiction over plaintiff's putative state law claims.

V.      LEAVE TO AMEND

Based on the above deficiencies, plaintiff's second amended complaint fails to state a claim upon which relief can be granted and must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Plaintiff has now had three opportunities to file a pleading that states cognizable claims against defendants.  (ECF Nos. 1, 14, 21.)  This Court recommends that plaintiff's second amended complaint be dismissed without leave to amend because plaintiff was previously notified of the deficiencies, provided multiple opportunities to correct them, and failed to correct the deficiencies.  (ECF Nos. 6, 18.)  A plaintiff's "repeated failure to cure deficiencies" constitutes "a strong indication that the [plaintiff] has no additional facts to plead" and "that any attempt to amend would be futile[.]"  See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1088 (9th Cir. 2009) (internal citations marks omitted) (upholding dismissal of complaint with prejudice when there were "three iterations of [the] allegations -- none of which, according to [the district] court, was sufficient to survive a motion to dismiss"); see also Plumeau v. Sch. Dist. 40 Cnty. of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

VI.     PLAINTIFF'S SUBSEQUENT REQUEST

On November 17, 2025, plaintiff filed a request for leave to proceed on his government claim.  (ECF No. 22 (citing Cal. Govt. Code § 911.2).)  In light of the above findings, plaintiff's request is denied without prejudice.

VII.    CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1.   The Clerk of the Court is directed to assign a district judge to this case.

2.   Plaintiff's request to proceed on his government claim (ECF No. 22) is denied without prejudice.

Further, IT IS RECOMMENDED that this action be dismissed without leave to amend, and the Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 9, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/grou2831.56

14